[Civ. No. 14193.   Second Dist., Div. Two.   Jan. 7, 1944.]

Estate of MARY I. READE CLARKE, Deceased. HILDA BOLTON, Appellant, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION (a National Banking Association) as Executor, etc., et al., Respondents.

A. Moresby White and Lorrin Andrews for Appellant.

C. L. McGaughey and Richard K. Gandy for Respondents.

WOOD (W. J.), J.—This is an appeal from a judgment of the superior court sitting in probate denying the petition of Hilda Bolton for the revocation of the probate of the will of Mary I. Reade Clarke. By this will, which was executed on June 13, 1940, Mrs. Clarke left her entire estate, valued at about $25,000, to Lorna Isobel Webster, with the British Old People's Home as the alternate distributee in the event Mrs. Webster did not survive the administration of her estate. The petition filed by Mrs. Bolton contained three grounds for revocation: that the testatrix lacked testamentary capacity, that the will was not executed in conformity with law and that the execution of the will was procured by the undue influence of Mrs. Webster. At the trial before the court sitting without a jury the two grounds for revocation first mentioned were abandoned. On the remaining issue the court found that the execution of the will "was not procured by the undue, or any, influence of the said Lorna Isobel Web-

ster or of any person whomsoever.'' On this appeal it is contended that the findings of the court are not supported by the evidence.

At the time of her death on November 18, 1940, Mrs. Clarke was eighty-two years of age. At that time her only living relatives other than her sister Mrs. Bolton were three first cousins and six second cousins. Mrs. Clarke was married in England in 1882 and soon after her marriage moved to the United States. Mrs. Bolton and Mrs. Clarke did not see each other thereafter at any time but they exchanged letters until Mrs. Clarke's death. Mrs. Bolton had an income of her own stated by respondents to be six hundred pounds sterling per year and by appellant to be five hundred twenty-two pounds sterling per year.

From the testimony presented by respondents it appears that about two weeks prior to the execution of the will Mrs. Clarke stated to a Mrs. Prickett, a friend of twenty-five years' standing, that she was worried because she had not made a will. Mrs. Prickett told her that her own father had left his affairs to a trust company and suggested that Mrs. Clarke follow the same course. About a week thereafter a Mr. Turner, who was trust officer at the Santa Monica branch of the Bank of America, telephoned to Richard Gandy, a lawyer, asking him to call upon Mrs. Clarke. Mr. Turner died prior to the trial. Mr. Turner went with Mr. Gandy to Mrs. Clarke's home and Mr. Gandy was left alone with Mrs. Clarke. Mr. Gandy, testifying concerning his conversation with Mrs. Clarke, stated that Mrs. Clarke informed him that she wished to have a will drawn in favor of Mrs. Webster; that he inquired concerning Mrs. Clarke's family and Mrs. Clarke told him that she had a sister in England but that she did not desire to leave anything to this sister because she was elderly and was adequately provided for; that the sister had received money from the family; that she did not care to leave anything to her relatives who were of a distant degree; that he asked concerning the disposition of her property if Mrs. Webster should not survive her, and Mrs. Clarke said she would like to leave it in that event to the British Old People's Home. Two or three days later Mr. Gandy returned to Mrs. Clarke's home with a draft of the will, accompanied by Mr. Cockins, an associate lawyer, and by Mrs. Hanson, a stenographer. The will was then executed by Mrs. Clarke. Mrs. Webster had

met them at the door but she was not present in Mrs. Clarke's room when the will was executed and witnessed. It was further shown in evidence that Mrs. Clarke had been a close friend of Mrs. Webster for many years. Mrs. Webster's husband died in May, 1939, and during his lifetime there also existed a close friendship between Mr. and Mrs. Webster and Mrs. Clarke. Mr. Webster had been able to assist Mrs. Clarke in an important financial transaction. When Mr. Webster died Mrs. Clarke asked Mrs. Webster to come and live with her because they needed each other. Mrs. Webster thereafter lived with Mrs. Clarke until her death, giving her the best of care and doing all of the housework. Evidence was also presented on behalf of respondents to establish that Mrs. Clarke was mentally alert up to the time of her death.

The principal witnesses on behalf of appellant were two clergymen of the Episcopal church. One of them testified that he had heard Mrs. Webster state that she knew that Mrs. Clarke did not like her; that she had said to him: "Mrs. Clarke's mind became clear and she asked me to bring her a piece of paper so she could write out saying that I should have the property, and I said 'No, that won't do. If you want to leave me the property make a regular will'." He also testified that Mrs. Clarke had told him Mrs. Webster had come to her when she was dazed over Mr. Webster's death and that she (Mrs. Clarke) did not know "how to get rid of her." It also appears from the evidence of appellant that Mrs. Clarke had been a devout attendant upon the Episcopal church prior to the arrival of Mrs. Webster at her home and that her attitude toward the church appeared to have changed; that Mrs. Clarke became seriously ill in February, 1940, and that thereafter her home was under the control of Mrs. Webster; that Mrs. Clarke had deteriorated mentally.

In order to set aside a will on the ground of undue influence it is necessary to establish that the influence was such as, in effect, to destroy the free agency of the testatrix.
It is not sufficient to prove general influence, however strong and controlling, but it must be shown that the influence was used directly to procure the will. It must amount to coercion destroying the free agency on the part of the testatrix. Opportunity to influence the mind of the testatrix, even coupled with an interest, is not sufficient. (*Estate of Arnold,* 16 Cal.2d 573, 577 [107 P.2d 25].)
The trial court made findings favorable to respon-

dents and under well established principles our function is to determine whether the findings are supported by substantial evidence. ■ There is no question whatever but that the findings are very abundantly supported. Since there is no question before us as to the propriety of a nonsuit there is no occasion to pass upon the contention of respondents that the evidence is insufficient to support a judgment for appellant if such a judgment had been entered.

■ The trial court did not err in refusing to admit testimony concerning a conversation between Mr. Turner, of the bank, and Reverend Maltas on April 15, 1941. After the death of Mrs. Clarke, Mr. Turner was handling matters for the estate. According to the statement of Mr. Maltas, when he went to the bank to see the will Mr. Turner loudly declared "there isn't a chance in the world for you to break Mrs. Clarke's will," and then walked away. Nothing had been said about breaking the will. Clearly the conversation between Mr. Maltas and Mr. Turner on that occasion was not material to any of the issues before the court. ■ Nor did the court err in excluding testimony of Mr. Meyer, the inheritance tax appraiser, as to the valuation of $25 which he had placed upon the personal property in Mrs. Clarke's home. Appellant sought to show by this testimony that Mrs. Webster was preventing the state from getting the proper tax money. The testimony was immaterial to any issue before the court.

Appellant has listed a number of instances in which she claims that the court erred in its rulings upon the admissibility of evidence. Respondents have not considered these matters of sufficient importance to make any reference to them in their brief. In a trial such as we are now called upon to review many close questions on the admissibility of testimony are presented to the court. We are satisfied from an examination of the points made by appellant that the court's rulings on the admissibility of evidence were generally correct; that appellant was permitted to make a full presentation of her evidence on the issues before the court and that the errors, if any, in the rulings upon the admissibility of evidence were not prejudicial.

The judgment denying the petition for the revocation of the will is affirmed. Respondents to recover costs from appellant.

Moore, P. J., and McComb, J., concurred.